COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 23, 2018
Date Decided: July 10, 2018

Michael P. Kelly, Esquire
Andrew S. Dupre, Esquire
Benjamin A. Smyth, Esquire
McCarter & English, LLP
405 North King Street, 8th Floor
Wilmington, DE 19801

Robert A. Penza, Esquire
Christopher M. Coggins, Esquire
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801

Re: *Brace Industrial Contracting, Inc., et al., v. Peterson Enterprises, Inc., et al.*, Civil Action No. 11189-VCG

Dear Counsel:

What follows is my decision regarding the Plaintiffs' "Motion for Reconsideration" due to alleged errors in my April 12, 2018 Bench Ruling (the "April Bench Ruling"), which amended some of the preliminary findings in my March 29, 2018 Bench Ruling (the "March Bench Ruling" and, together, the "Bench Rulings").

As I have written upon this matter at some length previously, non-party individuals interested (if any there be) are referred to the previous decisions in the record for a recitation of issues already resolved in this litigation. The issues subject to this Motion arose, in part, due to a ten-day delay in the closing of a corporate sale, rendering the parties' accountings concerning the transaction—as required both by

contract and this litigation—incompatible. I will not here repeat the voluminous factual record developed in this case. Instead, I address only the facts pertinent to this Motion; the remainder of the facts have been laid out, adequately in my view, in the prior opinions.

Because, upon review, I find that I did not misapprehend the law or the facts, I deny the Plaintiffs' Motion, which I consider to be a motion for reargument. In addition, I adopt the reasoning stated in the March Bench Ruling, as amended and supplemented by the April Bench Ruling. Finally, I reject the Defendants' request for sanctions. My reasoning follows.

## I. ANALYSIS

"To prevail on a motion for reargument under Rule 59(f), the moving party must demonstrate that the Court either overlooked a decision or principle of law that would have controlling effect or misapprehended the facts or the law such that the outcome of the decision would be different."[1] The moving party "bear[s] a heavy burden on a Rule 59 motion. Such motions are not a mechanism for litigants to relitigate claims already considered by the court."[2]

---

[1] *In re Zale Corp. S'holders Litig.*, 2015 WL 6551418, at *1 (Del. Ch. Oct. 29, 2015).
[2] *In re ML/EQ Real Estate P'ship Litig., Consol.*, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000).

*A. I Find No Error of Fact*

This matter was the subject of a multi-day trial, and involves a voluminous record. I have carefully reviewed that record and given the evidence the weight that I find it deserves. I find the Bench Rulings consistent with the facts in the record as I have found them.

The parties created two categories for line items in connection with the accounting required in this dispute: a post-closing adjustment (the "PC Adjustment") to be performed by an accounting firm (ultimately, by CohnReznick), and a "due to/from" adjustment (the "DTF Adjustment") to be determined by this Court. The merger agreement called for closing on a date certain, but closing actually occurred on a later date, requiring changes to the manner in which the adjustments were computed. The parties initially addressed these adjustments in contradictory ways, leading the Plaintiffs' expert, Steven Kops, to create a Rebuttal Report to align the categories in a way that allowed comparison. According to Kops, "both methods offer a certain level of validity" and "produce the same net result," whether these amounts "should be determined within the [PC] Adjustment [by the accounting firm] or, instead, here in the [DTF] Adjustment (Delaware Court of Chancery)."[3] As noted in the April Bench Ruling, the "key to fair treatment in these circumstances is

---

[3] JX 202 (Kops Rebuttal Report) ¶ 14.

3

consistency—mixing assumptions leads to inadvertent windfalls."[4]  The question before me involves which items belong to which categories, in light of the PC Adjustment resolution per the CohnReznick Report.

At trial, the Plaintiffs relied on the testimony of their expert, Mr. Kops.  I found Kops more credible than the Defendants' witnesses.[5]  In attempting to resolve the issues before me in the March Bench Ruling, I started my analysis with the figures from the Kops Initial Report. The March Bench Ruling was explicitly preliminary.  In that Ruling, I stated:

> Because I found the final round of briefing unclear in several respects, however, I decided to give this decision from the bench so that counsel could help with the computational questions remaining. To be frank, it is not clear from the briefing *to what extent the adjustments* addressed in this bench decision have *already been incorporated* in *the Kops report*, which is my *starting point*. I, therefore, leave it to counsel to provide final numbers in a form of order, which I request at the end of this bench ruling.[6]

The parties were unable to agree on the appropriate final calculation, leading to my April Bench Ruling.  Ultimately, in that Ruling, I recomputed my analysis using the Kops Rebuttal Report, which I found to be the appropriate way to reconcile both parties' attempts at accounting.

---

[4] Apr. 26, 2018 Bench Ruling Tr. 12:7–9.
[5] Mar. 29, 2018 Bench Ruling Tr. 5:19–22 ("I found Mr. Kops more credible than the witnesses, expert and lay, on behalf of the defendants. Specifically, I found Eric Peterson, in general, to be less than credible on this issue.").
[6] *Id.* at 4:23–5:9 (emphasis added).

The Plaintiffs contend that I made two findings in the April Bench Ruling that contradict the record and my March Bench Ruling: (1) that the Starting Cash Amount is $1,035,877 instead of $1,718,481, and (2) that $93,000 should be deducted from the Starting Cash Amount.[7] I address each in turn.

First, I revised the starting Starting Cash Amount from that used in the Kops Initial Report to that used in his Rebuttal Report to allow for the fact that CohnReznick sided with the Defendants in *all* of the PC Adjustment issues addressed in the October 20, 2017 Report.[8] The Kops Initial Report did not account for that outcome, but the Kops Rebuttal Report was consistent with such a finding.[9] Consequently, after further reviewing the record to determine "to what extent the adjustments addressed in this bench decision have already been incorporated in the Kops report," I revised the Starting Cash Amount to the amount used in the Kops *Rebuttal* Report, or $1,035,877. This outcome is not a factual error, but my finding upon final review of the record.

---

[7] Pls.' Mot. for Reconsideration ¶ 2.

[8] Defs.' Response To Pls.' Renewed Mem. Regarding Outstanding Issues ("Defs.' Nov. 17, 2017 Response") Ex. C ("CohnReznick Letter") 15.

[9] JX 202 (Kops Rebuttal Report) ¶ 6 n.3 ("In layman's terms, the issue is one of geography. The Initial Report and Mr. Placht's Report differ on whether certain line items should be considered in the [PC Adjustment] proceeding led by Deloitte LLP, or rather form part of a cash reconciliation analysis to be considered by the Court. To present an 'apples to apples' comparison, this Rebuttal Report accepts Mr. Placht's Report's characterization of various line items as 'Working Capital' rather than 'due to/from.' This has two net effects. First, it harmonizes the presentation of this Rebuttal Report to Mr. Placht's Report, so the two can be compared side by side. Second, it reduces Brace's claim in this proceeding and correspondingly increases Brace's claim in the [PC Adjustment] proceeding.").

Second, the Plaintiffs contend that I made a "math[ematical] error" by deducting $93,000 for "Brace Equipment held by [Defendant] Geodecke" from the Starting Cash Amount because "the value of physical equipment that Defendants rented from Plaintiffs . . . is not cash, and therefore was not included in the Starting Cash Amount from the Kops Initial Report."[10] True, but irrelevant. I previously found that the record did not demonstrate that PEI in fact held that equipment, and ordered PEI to "return any equipment, to the extent it still has it, within thirty days."[11] The Kops Rebuttal Report credits the $93,000 to Brace under the $1,035,877 Starting Cash Amount calculation, under the assumption that Geodecke has this equipment; it describes the amount as the "estimated value" of "Brace Equipment *held* by Geodecke," about which "specific testimony . . . will be offered during the upcoming [trial]."[12] Testimony was offered, but I found against the Plaintiffs on this issue. This is not an accounting miscalculation on my part but a failure of proof on the Plaintiffs' part. I find that the $93,000 deduction from the Starting Cash Amount was not erroneous.

### B. I Find No Error of Law

I find that the April Bench Ruling was not procedurally defective and there was no error of law. The Plaintiffs contend that the Defendants' Motion for Entry

---

[10] Pls.' Mot. for Reconsideration ¶ 22.
[11] Apr. 26, 2018 Bench Ruling Tr. 14:21–15:11.
[12] JX 202 (Kops Rebuttal Report) Ex. 1, 2 n.21 (emphasis added).

of Order (the "EO Motion")[13] was, in fact, a motion for reargument under Rule 59(f). Because it was filed thirteen days after the March Bench Ruling, the Plaintiffs urge me to reject the "motion for reargument" as untimely. The Plaintiffs contend that even if the EO Motion was not subject to Rule 59(f), the Court deprived the Plaintiffs of their right to respond to the EO Motion.

These arguments must fail. The Defendants' "EO Motion"—so called—was a response to my request for additional information to aid me in finalizing the calculations required in light of the report from CohnReznick. It was not a motion for reargument, if for no other reason than that the March Bench Ruling was, explicitly, preliminary. At any rate, I did not grant the EO Motion in the April Bench Ruling.

The Plaintiffs also argue that their due process rights were violated because they were unable to respond fully to the EO Motion. To the extent they are right, the matter is mooted by this motion practice. The Plaintiffs could respond to any of the Defendants' arguments in the EO Motion through the submission of this Motion, in connection with which, I note, they waived oral argument.

I find no error of law in the Bench Rulings, and this Motion must be denied.

---

[13] Defs.' Mot. for Entry of Order Following Bench Ruling or Alternatively for Revision under Rule 54(b).

*C. Sanctions*

The Defendants move for sanctions against the Plaintiffs, on the ground that the Plaintiffs' Motion for Reconsideration was "frivolous and appears vindictive" and represents the Plaintiffs' attempt to mislead the Court.[14]  I cannot improve on the wise advice of Vice Chancellor Laster: "lawyers should think twice, three times, four times, perhaps more before seeking Rule 11 sanctions or moving for fees under the bad faith exception."[15]  In my view, the Defendants have thought at least one time fewer here than is optimal.  This entire litigation has hardly been a model of civility, or of litigants' or judicial economy.  The Motion for Sanctions is unwarranted, and is denied.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

---

[14] Defs.' Response in Opp'n to Pls.' Mot. for Reconsideration 9.
[15] *Katzman v. Comprehensive Care Corp.*, C.A. No. 5892-VCL, at 13 (Del. Ch. Dec. 28, 2010) (TRANSCRIPT).